## Formichella Petition

*Marc L. Marks,* for petitioner.

ACKER, J., January 29, 1971.—The matter before this court arises from the presentment of two petitions. The first requests that doctors be appointed to examine Andrew J. Formichella at Warren State Hospital to determine whether he is in need of care at the institution and whether he is a lunatic. The second is a request to hold a hearing to determine whether Andrew J. Formichella is a lunatic. Previously, on August 14, 1970, the First National Bank of Mercer County had been appointed guardian of the Estate of Andrew J. Formichella by this court and he was declared incompetent.[1]

In addition, Andrew J. Formichella was committed to Warren State Hospital upon the affidavit of two competent physicians on the twenty-seventh day of April 1970, under section 404 of the Mental Health Act of 1966.[2]

The above-mentioned petitions were presented to this court at a pretrial conference held in a civil case on Wednesday, January 20, 1971.[3] Counsel candidly admitted that the petitions were filed for the sole purpose of preventing defendant in the civil action from testifying.[4] This case is scheduled to commence on February 8, 1971.

[1] The incompetency proceedings for the appointment of a guardian appear at Register's No. 31326 in the Court of Common Pleas of Mercer County, Pa., Orphans' Court Division.

[2] Act of October 20, 1966, P. L. (Spec. Sess.) 96, article IV, sec. 404, 50 PS §4404.

[3] The case presently pending and undetermined is Andrew J. Formichella, an incompetent, by his guardian, First National Bank of Mercer County, and Kathleen Formichella v. Joan Wagner, March term, 1970, no. 182.

[4] Act of May 23, 1887, P. L. 158, sec. 5, cl. (e) 28 PS §322.

The act seals the lips of a party whose interest is adverse to a decedent or a party who ". . . has been adjudged a lunatic and his right thereto or therein has passed . . . by the act of the law, to a party on the record who represents his interest in the subject in controversy."

There is no doubt that for the Act of 1887 to be a bar to defendant's testifying there must be an adjudication of lunacy. An adjudication of incompetency is not the equivalent of an adjudication of lunacy.[5] A finding of lunacy was required by the Act of June 13, 1836, P. L. 589. By its use, the court was to make provision for the care and management of the real and personal estate of the lunatic. In the inquisition, the court was to inquire as to how long the alleged lunatic had been such and whether he enjoyed lucid intervals. This statute was repealed.[6] There has been no comparable statute enacted to replace it. The Mental Health and Mental Retardation Act of 1966,[7] which is the latest enacted by our legislature concerning mental health, does not specifically define the term "lunacy." Rather, "mental disability" is described to mean "any mental illness, mental impairment, mental retardation or mental deficiency which so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under care as provided in this Act." The

---

[5] Yacabonis v. Gilvickas, 376 Pa. 247, 101 A.2d 690 (1954). See also Griffith v. Bergson, Admr., 54 D. & C. 531, (Delaware County, Sweney, J., 1945); James v. James, 2 D. & C. 123 (1922); Sunderland's Estate, 29 C. C. 267, 14 Dist. 257 (1904).

[6] 50 PS 1622 (Historical Note).

[7] Act of October 20, 1966, P. L. (Spec. Sess.) 96, art. I, sec. 101, 50 PS §4101, et seq.

definition further provides that it shall include conditions and terms heretofore defined as "insanity," "unsoundness of mind," "lunacy," "mental disease," "mental disorder," "feeble-mindness," "moron," "idiot," and "imbecile."[8]

Section 67 of the Act of 1836 defined a lunatic as ". . . every person of unsound mind, whether he may have been such from his nativity, as idiots, or have become such from any cause whatever." The definition of mental disability under the Act of 1966 specifically excludes senility unless mental illness or mental retardation is superimposed. The Act of 1836 was not as broad as the subsequent acts for it did not include mere weakness of intellect or a disposition to squander an estate.[9] Therefore, the Mental Health and Mental Retardation Act of 1966 is more inclusive than the Act of 1836. With the Act of 1836 repealed this court cannot entertain a petition to adjudicate a person a lunatic.

The cases cited previously in this opinion hold that the Act of 1887 does not prevent a person from testifying unless he has an adverse interest to a lunatic. A declaration of incompetency is insufficient.[10] The opportunity of a party to testify to the happening of an automobile accident should be

[8] Act of October 20, 1966, P. L. (Spec. Sess.) 96, art. I, sec. 102, 50 PS §4102.

[9] Sunderland's Estate, supra, page 268.

[10] The only case to the contrary is Hickey v. Hickey, 34 D. & C. 383 (1939), where the court held that a husband whose wife had been committed to a mental institution should not be permitted to testify in a divorce action as to occurrences between the parties even though there was not a formal adjudication of lunacy. Doing so, the court held that the husband acknowledged the wife's lunacy by his own testimony. Further, that to permit the husband to so construe the statute and permit the husband to testify would ". . . do violence to a conception of fairness that is deeply rooted in conscience and good morals": page 387.

denied only if expressly required by statute or appellate decisions. Because a person can be found to be mentally disabled under the Act of 1966 and still be able to perform many functions, including the ability to recall and recite events which have occurred, it would be manifestly unjust to attempt to extend by judicial decision that known by the legislature in 1887 as being a lunatic. At that time, to be a lunatic required a person to be much more severely mentally impaired than under the present definition of mental disability. If the legislature had desired to amend the Act of 1887 to incorporate the present definition of mental disability, it could have done so, or, in the alternative, could have set forth the conditions of mental disability which it felt should be met to bar an opposing party from testifying to the events surrounding an accident. It has not elected to do so.

Finally, we do not believe that this court should be called upon immediately prior to the trial of a case to make a determination of lunacy where the sole objective is to bar defendant from testifying. It makes the proceeding one of tactics rather than to accomplish any salutary result in the management of the incompetent or his affairs.

Wherefore, the petition requesting this court to hold a hearing to determine whether Andrew J. Formichella is a lunatic is denied, and the petition requesting this court to appoint doctors to examine Andrew J. Formichella at Warren State Hospital to determine whether he is in need of care at the institution and whether he is a lunatic is denied.

## ORDER

And now, January 29, 1971, the petition requesting this court to set a hearing to determine whether Andrew J. Formichella is a lunatic is denied, and the

petition to appoint doctors at Warren State Hospital to examine Andrew J. Formichella to determine whether he is in need of care at the institution and whether he is a lunatic is denied.